08  CV  03433

RECEIVED
APR 0 8 2008
U.S.D.C. S.D. N.Y.
CASHIERS

186-08/PJG/PLS

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BUNGE SA.,

                Plaintiff,

   -against-

DIANA SHIPPING AND TRADING LTD.
a/k/a DIANA SHIPPING & TRADING
LIMITED a/k/a DIANA SHIPPING AND
TRADING LTD., NICOSIA,

                Defendant.
----------------------------------------------------------x

**08 CV**

**VERIFIED COMPLAINT**

Plaintiff, BUNGE S.A. ("BUNGE"), for its Verified Complaint against Defendant DIANA SHIPPING AND TRADING LTD. a/k/a DIANA SHIPPING & TRADING LIMITED a/k/a DIANA SHIPPING AND TRADING LTD., NICOSIA ("DIANA SHIPPING"), alleges upon information and belief as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the New York Convention

NYDOCS1/302174.1

on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.    At all times material hereto, Plaintiff BUNGE was and still is a foreign business entity duly organized and existing under the laws of Switzerland with a branch office with an address at 13 Rte de Florissant, P.O. Box 518, Ch-1211, Geneva 12, Switzerland.

3.    At all times relevant hereto, Defendant DIANA SHIPPING was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 58, Digenis Akritas Avenue, Ghinis Bldg., 2nd floor 1061 Nicosia, Cyprus.

4.    On or about February 5, 2007, Plaintiff BUNGE, in the capacity as owner of the M/V MARIGOLD, entered into a maritime contract of charter party with Defendant DIANA SHIPPING, as charterer, for the carriage of cargo of sugar. A copy of the charter party and fixture recap is annexed as **Exhibit A.**

5.    Pursuant to the terms of the charter party, the vessel was duly delivered into service under the charter, the cargo was loaded onboard and demurrage was earned.

6.    On or about April 23, 2007, BUNGE sent DIANA SHIPPING the laytime calculation showing a demurrage claim for $322,067.01. A copy of the demurrage calculation is attached as **Exhibit B.**

7.    Plaintiff BUNGE duly demanded payment from Defendant DIANA SHIPPING of the outstanding demurrage in the sum of $322,067.01.

8.    Despite due demand, DIANA SHIPPING in breach of the charter party with BUNGE, has refused and/or otherwise failed to pay the amount due and outstanding.

9.    Plaintiff BUNGE has fulfilled all obligations required of it under the charter party.

10.    The charter party provides for the application of English law and all disputes between the parties are to be resolved by arbitration in London, and BUNGE specifically reserves its right to proceed in arbitration.

11.    This action is brought to obtain jurisdiction over DIANA SHIPPING and to obtain security in favor of Plaintiff BUNGE in respect to its claims against DIANA SHIPPING and in aid of London proceedings.

12.    This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorneys' fees and costs in the London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

13.    Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorneys' fees, arbitrators' fees, disbursements and interest are recoverable as an element of Plaintiff's claim.

14.    Plaintiff estimates, as nearly as can be computed, that the legal expenses and arbitral costs of prosecuting the claim in London will be $85,000 and interest on its damages are estimated to be $90,178.76 (calculated at the rate of 8% for a period of three and one half (3½) years, the estimated time for completion of the proceedings in London).

15.    AFRA GENERAL TRADING (L.L.C.) and ADVANCED OCEAN SHIPPING LLC are entities which act in the capacity as agents and/or managers and/or paying agents of Defendant DIANA SHIPPING and receive, hold and/or transfer assets for and on behalf of Defendant DIANA SHIPPING.

**Request for Rule B Relief**

16.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain

Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name and/or in the name of its paying agents and/or funding agents AFRA GENERAL TRADING (L.L.C.) and ADVANCED OCEAN SHIPPING LLC, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

17.    The total amount to be attached pursuant to the calculations set forth above is $497,245.77.

WHEREFORE, Plaintiff BUNGE S.A. prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b.    That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including $497,245.77 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its own name or as may be held, received or transferred for its benefit, and/or in the name of its paying agents

and/or funding agents AFRA GENERAL TRADING (L.L.C.) and ADVANCED OCEAN SHIPPING LLC, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any judgment entered against the Defendant in the London proceedings; and

d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
     April 8, 2008

         FREEHILL HOGAN & MAHAR, LLP
         Attorneys for Plaintiff

         By:_____
           Peter J. Gutowski (PG 2200)
           Pamela L. Schultz (PS 8675)
           80 Pine Street
           New York, NY  10005
           (212) 425-1900

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1.    I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Peter J. Gutowski

Sworn to before me this
8th day of April, 2008.

_____
Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

# Ex. A

FIXTURE RE-CAP M/V 'MARIGOLD'/DIANA SHIPPING AND TRADING LTD, NICOSIA

Doc-No. 3620886  5/FEB/2007  16:53 h  GGI


MV MARIGOLD/DIANA - SUGAR BRAZ/IRAN
------------------

AS PER YR AUTHORITIES PLSD TO CONFIRM CLEAN FIXTURE AS PER FOLL FULL
RECAP:
----------------------------------------------------------------------
---


OWNERS       : BUNGE S.A. GENEVA, AS DISPONENT OWNS
CHRTRS       : DIANA SHIPPING AND TRADING LTD., NICOSIA
CHARTER PARTY : DATED 5TH FEBRUARY 2007


VESSEL:
MV MARIGOLD
SDBC CLASS B.V.
48,355 MT AT 10,84 MTRS SSW
PANAMA FLAG BUILT: 1982
GRT/NRT: 29252 / 16159
LOA 223,91/BEAM 32,00/DEPTH 15,16 MTRS
6 HOLDS/6 HATCHES
HATCH DIMS: H1: 13,44 X 16,20M
HATCH DIMS: H2-3-4-5-6: 16,80 X 16,20M
H COVERS: MAC GREGOR HYDRAULIC CHAIN PULLED H COVERS
GEAR : 3 X 20 T - 2 X 15 T SWL
GRAIN : 61874 CBMTRS / BALE 60855 CBMTRS
ALL DETAILS ABT

-FULL DESCR: ATTACHED (BUNGE QUESTIONNAIRE)

-CHRS QUESTIONNAIRE: PARTIALLY, FILLED IN, OWNS PLS FILL IN MISSING
ITEMS
SOONESTG IE. NO. 05,06,07,12,13,15,17,22,23,25,26,35,37,39,42,50 AND
51.

-CERTIFICATES ATTACHED:
  CERTIFICATE OF CLASS
  CERTIFICATE OF DOCUMENT OF COMPLIANCE
  SAFETY MANAGEMENT
  SAFETY EQUIPMENTS
  H & M CERTIFICATE
  INSURANCE POLICY CERTIFICATE
  ISM CERTIFICATE

  Derrating certificate is directly handled by Master and confirm valid
  onboard. If needed we can request Master and fax to Charterers at
once.

For:

A/C Diana Shipping and Trading Ltd., Nicosia

Negotiations and fixture to kept strictly private and confidential by all
parties involved.

Owners guarantee that vessel is classed highest Lloyds 100 A1 or equivalent
and P and I Covered, and that vsl shall not be sold/change Ownership during
currency of this C/P and shall not change Class or P&I Club.

Owners guarantee that vessel is fully fitted and suitable for the carriage
of raw sugar cane in bulk.

Owners guarantee that vessel has not carried fishmeal/illegal goods and or
bone meal in her last 3 voyages or other similar cargo that would affect
loading of raw sugar cane in bulk.

Owners guarantee that vessel's gear is in full working order serving all
hatches.  In addition, the vessel has upto date certificates and
documentation to perform the intended voyage.

Owners guarantee that the vessel's hatches are watertight.

Owners confirm that the vessel will not be scrapped after this voyage.

If required by Charterers, Owners undertake to issue, without prejudice,
or otherwise supply any Letter or Certificates in connection with vessel's
classification, registrations, age, flag, gear, details of vessel's entry
in P&I Club, or any other certificates available to Owners that Charterers
may require to comply with and negotiate Letter of Credit for the sale of
sugar.

Up to Owner's best knowledge, vessel is not blacklisted by the Arab league
and there is no Israeli interest in the vessel.

A hose testing would be carried out on the vessel's hatchcovers and in
case of vessel's failure Owners to repair same in order to make watertight
at their time/expense.

Owners guarantee that all vessel's crew members vaccination
cards/certificates are upto date and valid. Any time lost at
load/discharge port(s), due to any deficiency, not to count as laytime,

unless used and any additional costs incurred due to any deficiency to be
for Owner's A/C.

Owners confirm that vessel is fully ISPS compliant  (Owners to fax Certificate)

Min/Max 46500 metric tons raw sugar in bulk as sole cargo

Loading       :1/2 safe berths always afloat PARANAGUA

Discharging  :1/2 safe berths always afloat B.CHAHBAHAR OR B.ABBAS OR
 BUSHEHR OR B.I.K CHOPT


Laycan 13/20 Feb 2007. Vessel in ballast towards S America, eta PARANAGUA
14/15 Feb AGW/WP/UCE.

LOADING TERMS
-------------
Vessel to tender minimum 7 and then 5 days definite vessel's arrival
notice to the sellers, Diana Shipping and Trading Ltd., Nicosia Fax No.
00357 2 766646, Telex No : 5604 RIMA CY and Ship's agents.

20000 mts per WWD of 24 consec hours. Time from Noon Saturday to 0800 hrs
Monday (or local equivalent) and from 1700 hrs on a day preceding a
holiday until 0800 hrs the next working day excepted unless used.

On arrival at loadingport, vessel to tender N.O.R. by cable through
shipping agents to the sellers WIBON/WIPON/WFPGON/WCCON.  Such N.O.R. will
be tendered during ordinary office hours.

Laytime to begin 14.00 hrs if N.O.R. presented before Noon and at 08.00
hrs the next working

day if N.O.R. presented after noon.

In case the vessel fails hatch cleanliness survey, time from the
commencement of survey until vessel's holds passed is not to count as
laytime.

Approx 20 days vessel's arrival notice to dischport to be advised buyers.

Definite 15/10/7//5/3/2/1 days vessel's arrival at dischargeport notice to
be advised to Receivers (to be advised), and to Diana Shipping and Trading
Ltd., Nicosia Fax No 00357 2 766646 and e-mail :
dianashi@diana-shipping.net

DISCHARGING TERMS
-----------------
10000 mt per WWD of 24 consec hours Thurs aft fhex even if used.

Time from noon Thursday until 0800 hrs Saturday and from 1700 hrs on a day
preceding a holiday until 0800 hrs the next working day excepted even if
used.

On arrival at dischargingport, vessel to tender N.O.R. during ordinary
office hours (Saturday to Wednesdays  0730 -1400, and Thursday 0730-
1300 hrs).

If N.O.R. tendered before noon, laytime shall commence at 1400 hrs in the
afternoon of same day. If N.O.R. tendered after noon, laytime shall
commence at 0800 hrs next working day

Master of the vessel to issue clean Mate's receipts and Bills of Lading
for any cargo which he accepts to load.  Master has the right to reject
any cargo that would involve the clausing of Mate's receipts and/or Bills
of Lading.

Demurrage US$ 26,500 per day and pro-rata.
Despatch half demurrage for working time saved at loadport
Despatch half demurrage for working time saved at dischargeport.

Freight US$48 free in/out spout trimmed per metric tonne
Freight is inclusive of EWRI / Crew War Bonus / Blocking and Trapping
which all for Owner's A/C.
Freight is deemed fully earned on loading discountless and non-
returnable,
vessel and or cargo lost or not lost.

Freight payment
95 percent freight payable less address commission only within 3 banking
days of signing/releasing 'Freight payable as per C/P' Bills of Lading.
Balance of freight to be settled together with demurrage/despatch within
30 days after completion of discharge in Iran and presentation of final
freight statement.

Vessel is free from extra insurance due to her age/flag/class

Should the original Bills of Lading will not be available for
presentation
to the Master on arrival at dischargeport, Owners and the Master agree to
release cargo as authorised by Charterers, but Charterers are to
indemnify
Owners, their servants and agents and to hold all of them harmless in
respect of any reason arising from such authorised release of cargo
without original Bills of Lading.

Charterers  to provide Owners prior to commencement of discharge with a
Letter of Indemnity issued in accordance with Owner's P&I Club
requirements and legibly signed by two persons (stating their ranks),

authorised to sign such letter on behalf of the Charterers.

Bill (s) of Lading to be issued on named Receivers.

At loading and discharging ports, shifting cost from anchorage to first
berth to be for Owner's account/time.
At loadingport and dischargingport, shifting between loading berths and
between discharging berths to be for chrts's account and time to count
as
laytime

Vessel to pay D/A both ends as per official tariff at least 5/3 days
prior
arrival at L/D ports.

Capping of dischargeport d/a, as agreed,  at apply
Charterers guarantee D/A at dischargeport to be max US$ 26,000.- for
Owner's A/C.

Owners to appoint Charterer's nominated agents both ends

Lighterage/lightening, if any, to be for Charterer's account.

BIMCO  ISPS/MTSA clause for voyage Charter Parties 2005 to apply.

At loadport, Brazilian Merchant Marine Renewal Tax, Quota da
Providencia,
Contribuicao da Uniao, Port Utilization Tax and Inframar tax to be for
Shipper's A/C. All other customary taxes and/or dues on the vessel to
be
for Owner's A/C.

All taxes/dues on vessel and/or freight  to be for Owner' a/c both ends
All taxes/dues on cargo to be for Shippers/Cargo Receivers account and
settled directly by them both ends.

Arbitration in London and English Law to apply.

6.25% address commission plus 1.25% brokerage on F/D/D.

Otherwise AS PER MV GULF RIYAD CP DD 29 DEC 2006 (BASED Sugar99 CP)
amended as per main terms agreed above (CP PFMA ATTACHED) AND WITH
FOLL ALTERATIONS:


LINE 91 - OWRS' BANKING DTLS AS PER BLW

BANK OF NEW YORK, NEW YORK
SWIFT CODE IRVTUS3NXXX
FOR ACCOUNT : CREDIT SUISSE, GENEVA
SWIFT CODE CRESCHZZ12A
FAVOUR OF : BUNGE SA
USD ACCOUNT NBR 0251-308-620-82-4
IBAN : CH84 0425 1030 8620 8200 4

LINE 292 - DELETE FROM "CHARTERERS HAVE THE" TO "THIS CHARTER-PARTY"

```
CLAUSE 48 - AMEND AS PER RECAP
++++END CLEAN RECAP+++
---------------------------------------------------------------------
-----
+
```

PARTIES KINDLY CHECK ABOVE AND CONFIRM ALL IN ORDER OR ADV IMMY IF ANY
DISCREPANCY EXISTS ORDER CORRECT AS NECESSARY AND ISSUE UP C/P
ACCORDINLY

OWNS PLS RVRT WITH:
-NOTICE ON FIXING
-MISSING ANSWERS TO CHRS QUESTIONNAIRE

CHRS PLS RVRT WITH
-FULL CONTACT DETAILS OF AGENTS AT LOAD
-FULL CONTACT DETAILS OF AGENTS AT DISCH


MANY TKS TO BOTH PARTIES TO EXCELLENT COOPERATION IN CONCLUDING THIS
FIXTURE
AND LOOK FORWARD TO A SMOOTH VOYAGE

TKS/RGDS
IFCHOR S.A.
AS BROKERS ONLY


*****************************************************************
IFCHOR GROUP SA, Place Pépinet 1, 1003 Lausanne, Switzerland
as brokers only

capes@ifchor.ch - panamax@ifchor.ch - handy@ifchor.ch
securities@ifchor.ch - operations@ifchor.ch - capesops@ifchor.ch
               www.ifchor.com

Phone: +41 21 310.31.31 - Fax: +41 21 310.31.00/01
  Tlx: 450 351 IFC CH -  450 352 IFOPS CH

*Sugar Charter-Party* 1999.

Date...Nicosia ...5[th] February 2007

It is this day mutually agreed BETWEEN...Diana shipping and Trading Ltd.........Charterers    1
1.and    2

CHARTERERS/ OWNERS

of the good motor vessel called the    'MARIGOLD'.............................    3
highest class ...BV..........(and to be of that class for the duration of the voyage), Last special    4
Survey:......2004.........Flag:  Panama.........Built:.....1982.........Call Sign:...HPCT.......    5

DESCRIPTION OF VESSEL

2. G.T./ N.T:..............29252./ 16169............................Type.....BULK CARRIER.............................    6
...deadweight (salt water):....48355.10 metric tons    7
Fully loaded draught (summer marks) salt water: 10.84. meters..... LOA/Beam:. 223.91 /32.0.................    8
Engines located amidship/aft: aft.........Number of Holds/Hatches:... 6/6...........Hatch Sizes:...    9
...................................................................................................................................    10
Gear(including vessel's union purchase capacity    11
Speed: abt ...13.5 Knots......Bale/Grain Cubic:(261,876.0 cbm grain    12
...............................) Last  cargoes:..................................    13
(a)  Owners guarantee  that the vessel is fully insured for Hull and Machinery risks. Owners guarantee  that the vessel    14
is insured with........................................................................for the amount of    15
USD... 12,00,000.00... and that the vessel will remain fully covered for the duration of this voyage.    16
(b)  Owners guarantee that the vessel is fully P & I covered with .....THE LONDON STEAMSHIP .............    17
.................................................and that the vessel will remain fully covered for the duration of this voyage.    18
(c)  Owners guarantee that the vessel will not change flag/class/Ownership/Managers/P & I Club coverage during    19
the currency of this Charter-Party without Charterer's prior consent.    20
(d)  Owners guarantee:    21
(i) that the vessel carries and  will do so for the duration of the voyage all certificates and other documentation    22
whatsoever required  by her flag, state authorities and / or the authorities at any  place of call under this    23
Charter-Party, and    24
(ii) that, from the date of coming into force of the International Safety Management (ISM) Code in relation to    25
the vessel and thereafter during the currency of the voyage both the vessel and "the Company" (as defined    26
by the ISM Code) shall comply with requirements of the ISM Code. Upon request the Owners shall    27
provide the Charterers with a copy of the relevant document of compliance and Safety Management Certificate.    28
Compliance by the Owners with the provisions of this Clause 2 (d) is a condition of this Charter-Party the    29
breach thereof will entitle the Charterers to claim damages for any costs/consequences arising as a result    30
and/or at any time cancel  this Charter-Party.    31
**Vessel to be  further described and descp to be attached with questionnaire**

POSITION

3. Now... BOUND TO PARANAGUA, BRAZIL.........    32
..............    33
that the said  vessel being tight, staunch, strong and in every way fitted for the voyage including the fulfillment of all    34
documentary requirements for the service contemplated by this Charter-Party, shall with all Charter - Party speed,    35

LOADING AREA

4. weather permitting, sail and proceed to ...Paranagua, Brazil.................................................    36
...........................................................................................and there load always afloat, or safe    37
aground where vessels of similar size are accustomed to lie in safety, at ONE or TWO safe ports, ONE or TWO  safe    38
loading berths and/or safe loading anchorages each port, as ordered, from the Factors of the  said Charterers, a full    39

DESCRIPTION OF CARGO

5. and complete cargo of ......46,500 metric tons minimum/maximum.....................    40
...Raw  sugar cane in bulk.............................................................................    41
metric tons ...                        per cent net weight in Charterer's/Master's option,  as sole cargo only,    42
which  the said Charterers bind themselves to ship, always under ship's deck  in  cargo holds only. The said cargo to be    43
brought to and taken  from alongside, free of expense and  risk to the ship, and being  so laden shall proceed with all    44

DISCHARGING AREA

Charter-Party— Convenient speed as directed to one or two safe berths, safe anchorages    45
...always afloat one south Iranian Port in Charterer's option    46
    47
................................................................................................................................    48
    49
or so near "hereunto as she may safely  get always afloat  or safe aground where vessels of similar size are accustomed    50
to lie in safety, and  there  deliver the same in ONE or TWO safe discharging  berths  and/or safe discharging anchorages    51
each  port as ordered, on being  paid  freight "as per agreement".    52

6. The Act of God,  perils of  the  sea, fire on board,  in hulk or craft, or on shore, crew, enemies, pirates, and thieves,    53
arrests and  restraints  of  princes, rulers and people, collisions, stranding, and  other accidents of navigation excepted    54
even  when  occasioned  by negligence, default, or error  in  judgement of  the  Pilot, Master, mariners or other servants    55
EXCEPTIONS    of the Shipowners. Not  answerable for any loss  or damage arising  from explosion, bursting of boilers, breakages of    56
shafts,  or any latent  defect in  the machinery or  hull, not resulting from want of due diligence by the Owners of  the    57
ship, or any of them, or by the ship's Husband or Manager.    58

AGENTS    7. At port(s) of  loading and discharging Owners  to appoint, employ and  to be solely responsible for Agents, as selected    59
by Charterers without risk or liability to Charterers, for all ship's business, owners paying the agency fees.    60

TAXES/DUES/ DISBURSEMENTS

8. Except for  the  taxes and/or dues specified below all taxes and/or dues on  vessel and/or freight at load/discharge ports    61
to be for Owners' account and all taxes and/or dues on cargo to be for Shippers' account at load port(s) and Receivers'    62
account at discharge port(s).    63
(a) In BRAZIL    64
Brazilian Merchant Marine Renewal Tax, Quota da Provedencia, Contribuicao da Uniao and Port Utilisation Tax    65
to be for Shippers' account. All other customary taxes and/or dues on the vessel to be for Owners' account.    66
(b) In GERMANY    67
    68

~~Quay, ght and Tonnage Dues to be for Shippers' account.~~ 69
~~(c) In MOROCCO~~ 70
~~Peage Dues to be for Receivers' account.~~ 71
~~(d) In SPAIN~~ 72
~~Tonnage Tax to be for Owners' account.~~ 73
~~(e) In PORTUGAL~~ 74
~~Gold Dues (Commercial Maritime Tax) to be for Receivers' account.~~ 75
~~(f) In YEMEN~~ 76
~~Compulsory shore cranage to be for Receivers' account.~~ 77
~~(g) In SRI LANKA~~ 78
~~Sri Lankan Tonnage Dues to be for Owners' account.~~ 79
~~h) In FINLAND~~ 80
~~Finnish Fairway Dues to be for Owners' account.~~ 81
~~(i) In GHANA~~ 82
~~Ghana Shippers' Council Service charge to be for Owners' account.~~ 83
At all ports of loading and discharging all customary port charges including pilotage and harbour dues on the vessel 84
to be for Owners' account. Owners to put load and discharge port Agents in funds prior to vessel's arrival. In the
event that Owners fail to put Agents in funds prior to vessel's arrival and vessel's berthing/commencement of loading/ 85
discharging/sailing is delayed, then Owners to be fully responsible for all/any delays/costs/consequences that may 86
arise either directly or indirectly as a result. 87

FREIGHT PAYMENT  9. Freight payable per metric ton net Bill of Lading weight being in full of all taxes and/or dues stipulated to be for 88
Owners' account as per Clause 8, Port charges, Pilotages, and Harbour dues on the vessel. 89
~~upon the safe arrival of the vessel and right and true delivery of the cargo at destination.~~ **The freight is deemed** 90
**fully earned upon shipment discountless and non-returnable, vessel and or cargo lost or not lost.** The freight to be paid 91
in United States Currency to Owners' Bank **(To be advised)**............................................................................ 92
................................................................................................................................................................ 93
................................................................................................................................................................ 94
................................................................................................................................................................ 95
Owners to advise their New York corresponding Bank, otherwise Charterers not to be responsible for late receipt of 96
freight by Owners.............................................................................................................................................. 97
................................................................................................................................................................ 98
~~as follows: 90% (Ninety per cent) of the estimated freight less commissions, estimated loading despatch and extra~~ 99
~~insurance, if any, to be paid within seven days of sailing from final loading port, provided that signed clean bills of~~ 100
~~lading are released immediately to Shippers on completion of loading, stating 'Freight payable as per Charter-Party'.~~ 101
~~The balance of freight, from which load and discharge despatches are to be deducted (allowing for any estimated~~ 102
~~loading despatch already deducted) or to which load and discharge demurrages are to be added, as applicable, to be paid~~ 103
~~on right and true delivery of the cargo and surrender and agreement of timesheets and statements of facts and signed~~ 104
~~notice of readiness, with Owners' calculations of any demurrage or despatch incurred at loading and discharging ports~~ 105
**95 pct freight payable less 6.25 pct address commission, within Banking days upon completion of loading and
signing /releasing of b/l.**
**Demurrage/dispatch at load/disport to be settled within 30 days after completion of discharge in Iran .**
Any advance on freight made to Owners in order to obtain 'Freight Prepaid' Bills of Lading is not recoverable 106
from the shipowners if the vessel and/or cargo is lost by reason or as a consequence of any of the excepted perils as 107
listed in Article IV, Rule 2 of the Hague Visby Rules. 108

LIEN  10. It is also agreed that the Owners of the said vessel shall reserve to themselves the right of lien upon the cargo laden 109
on board for the recovery and payment of all freight, deadfreight and demurrage (if any). 110

CESSOR  11. Charterers liability to cease when cargo is shipped and Bills of Lading signed, except as regards payment of freight, 111
deadfreight and demurrage (if any). 112

NOTICES  12. Notice on fixing and ~~20, 14min,~~ 10 and ~~7then~~ 5 days provisional notice, 72, 48 and 24 hours definite **arrival** notice of 113
E.T.A. at loading
~~range or first loading port to be sent by Master by cable/telex to sellers,~~ Advanced Diana shipping and trading 114
Ltd,Nicosia fax no. 00357 22 766646 and e-mail: dianashi@diana-shipping.net ........Owners or Master to keep Charterers 115
fully informed of any 116
change in ship's position prior to loading. Owners to be responsible for all consequences and damages of whatsoever 117
nature and however arising in the event of Owner's or Master's failure to keep Charterers fully informed of any 118
change in ship's position prior to loading. Owners to advise Charterers whether they intend to bunker prior arrival at 119
loadport and/or their bunkering plans prior to sailing from last load port. Charterers to nominate first (or sole)loading 120
port ~~on receipt of the 72 hours definite notice to Owners or their Agents. Nomination of additional loading port (if~~ 121
~~any) to be declared 24 hours prior to sailing from previous port, and any nomination given earlier not to be regarded~~ 122
~~as a final declaration.~~ 123
Master to send a cable/telex to Charterers (cable\telex address. sellers,Diana shipping and trading Ltd,Nicosia fax 124
no. 00357 22 766646 and e-mail: dianashi@diana-shipping.net ...................) on departure from last loading port, giving 125
the 126
~~gross and net quantities, and number of bags stated on Bills of Lading,~~ also sailing date,and ETA at discharging range 127
or first discharging port. On sailing from final load port Master to cable/telex Charterers every 48 hours vessel's E.T.A. 128
basis intended discharge area or port. Should the vessel be delayed on passage for any reason longer than 24 hours Master 129
to immediately cable/telex Charterers reason for delay with revised ETA and Owners responsible for all consequences
and damages of whatsoever nature and howsoever arising in the event of Owners or Master failing to do so.

LAYDAYS/  13. Laydays for loading not to count before the 13 February 2007................................................................... 130
CANCELLING  and if the ship is not ready to load by the ...20 February 2007...... Charterers have the option to cancel this 131
Charter-Party, declarable latest upon vessel's arrival at loading port. 132

STEVEDORES  14. Stevedores for loading, stowing, trimming and discharging to be employed by Charterers or Shippers/Receivers at 133
F.I.O.S.T  their expense and under Master's control. Stevedores shall be considered as Owners servants, and the Charterers/ 134
~~Shippers/Receivers are not to be responsible for any negligence of whatsoever nature, default or error in judgment~~ 135
~~of the stevedores employed.~~ 136

TALLYMEN  ~~15. Shore tallymen to be employed by the Vessel at the expense of the Vessel.~~ Quantity stated on Bills of Lading to be 137
~~conclusive evidence against the ship as to the number of bags of Sugar shipped, errors and obvious fraud excepted.~~ 138
~~Ship to be responsible for any number of bags short delivered of signed Bill of Lading quantity.~~ 139

MATE'S RECEIPTS
AND BILLS OF
LADING.

16. Clean ℅.    Receipts to be signed for each parcel of sugar when on℅ d, and Master to sign Bills of Lading in accordance therewith as requested by Charterers or Shippers. Master to reject any cargo that would involve the clausing of Mate's Receipts end/or Bills of Lading. If Bills of Lading are issued showing a destination at any time prior to official declaration in accordance with Clause 20, such destination not to constitute a declaration of discharging port(s). If this situation occurs, Owners or their Agents will authorize Charterers or nominated Agents without reservation or delay, the amendment, addition and/or deletion with regard to destination shown on Bills of Lading, or, to the signing of new sets of Bills of Lading, Charterers or their Agents delivering up old sets of Bills of Lading in exchange. Bills of Lading to be released and forwarded to Shippers or their Agents for each parcel immediately on completion of loading such parcel. In the case of a single Bill of Lading covering the entire cargo such Bill of Lading to be released immediately on completion of loading. 140
141
142
143
144
145
146
147
148
149

PREPARATION FOR
LOADING
AND DISCHARGING

17. Ship's holds to be odourless and free from insects, properly swept, cleaned and dried to the satisfaction of Shippers' and/or Charterers' Agents before loading. Ship's holds to be washed down only if cargo injurious to sugar carried previously, and if done, holds to be completely dry before tendering notice of readiness. Charterers have the right to arrange a condition survey and/or hose test prior to commencement of loading which to be at Charterer's expense for which purposes a Lloyds Agent or Salvage Association Surveyor will be used where possible, failing which a mutually agreed Surveyor shall be used. 150
151
152
153
154
155

~~(a) BAGGED CARGO.~~ 156

~~Ship to provide and lay sufficient dunnage and mats or Kraft paper, and to be so dunnaged so as to effectively protect and prevent the bags coming into contact with the edges of beams and stringer plates.~~ 157
158

~~If cargo is stowed in refrigerator hatches, alleyways, bunker hatches, deep tanks or other awkward places, Owners shall pay the extra labour costs of loading and/or discharging from such places. The loading and discharging rate shall be half the Charter-Party loading and discharging rate for cargo carried in such places.~~ 159
160
161

~~No paint or other injurious substance to be used by the ship for marking the bags, the ship to be responsible for all loss or damage caused thereby.~~ 162
163

~~No bags to be cut for stowage purposes. Ship to be responsible for all loss sustained in the event of bags being cut.~~ 164
165

(b) BULK CARGO. 166

No cargo to be loaded in deep tanks or other awkward places. 167

All cargo battens, tween-deck hatch boards dunnage and ship's gear and stores, etc., to be removed prior to loading and stowed in compartments not containing sugar. Spare propeller if carried in hold, to be properly boxed in. The removal and replacement of beams, hatch covers, tents and tanktop lids, as and when required by Charterers, to be carried out by ship's crew, at ship's expense at both ends. 168
169
170
171

Owners consider the vessel suitable for grab discharge. Tanktops, tunnel shaft and exposed pipe lines to be effectively protected by Owners. Bleeding holes in the coamings to be securely covered, and bilge limbers to be sealed. 172
173
174

**Vessel will be discharged by Cargo Receiever's/Stevedores.** Damage by grabs (if any) to be settled directly between Owners and Stevedores, Charterers incurring no responsibility therefore. **However Charters to assist Owners in obtaining settlement from stevedores of the cost of damage incurred. Grabs/stevedore's damage affecting Class shall be repaired prior to vessel leaving port.** 175
176

Vessel's holds not to be ventilated during the voyage. All ventilators to be sealed and any access of fresh air to the cargo to be strictly prevented. 177
178

At discharging port(s) the collection of sweepings from the holds, bilges and coamings to be done by the Stevedores at Receivers expense, and time used to count as laytime. 179
180

Vessel not to take any fresh or ballast water on board at discharging port(s) until the vessel has completed discharge. 181
182

GENERAL    18. Vessel i.    in possession of a valid certificate of efficiency for winch     d derricks/cranes for the duration of this    183
Charter.    184
Vessel to supply at both ends, at all times, free of charge to Charterers, winches and derricks/cranes, power, and    185
gear in good working order at all hatches including ropes as required for loading and discharging sugar, also full    186
lights as on board for night work on deck and in the holds, if required.    187
In the event of a breakdown of a winch and derrick/crane or winches and derricks/cranes by reason of disablement    188
or insufficient power and/or failure of lights, the laytime to be extended pro-rata for the period of such inefficiency in    189
relation to the number of working gangs available. If on demurrage, time lost pro-rata to be deducted from same.    190
Owners are to pay in addition the cost of labour affected by the breakdown, either stood off or additionally engaged    191
including the hire of shore gear, or as otherwise regulated by the custom of the port. **If shore cranes hired and**    192
**Owners charged with cost of same, then laytime to count in full.**
The Shippers and/or Consignees will be permitted to load and discharge outside ordinary working periods and    193
during excepted periods, the Owners providing free of charge all vessel's facilities, including services of Officers    194
and Crew.    195
Understood rates of loading and discharging in the Charter-Party are based on a minimum of four hatches being    196
available at commencement of loading and discharging; if less than four hatches are available, loading and/or    197
discharging rates to be reduced  pro-rata.    198
199
200
All opening and closing of hatches and tweendeck hatches, including the handling and shifting of beams, at    201
loading and discharging ports is to be done or paid for by the vessel, and time used not to count as laytime.    202

LOADING LAYTIME    19. At each loading port, even if loading commences earlier, laytime for loading to begin at 1700 hours if written/cabled/    203
telexed notice of readiness to load is tendered to Agents before noon and at 0800 hours next working day if written/    204
cabled/telexed notice of readiness is tendered to Agents after noon. Notice of readiness to be tendered to Agents in    205
ordinary office hours, Saturdays afternoon, Sundays (or local equivalents) and holidays excepted, whether in berth or not.    206
Laydays at the average rate of ..............20000.............................metric tons calculated on gross weight    207
provided vessel can receive at this rate, per weather working day of 24 consecutive hours, time from noon Saturdays    208
to 0800 hours. Mondays (or local equivalents) and from 1700 hours day preceding a holiday until 0800 hours next    209
working day excepted, **unless used, if used ,actual time used to count.** shall be allowed to the said Charterers, for    210
loading and waiting for orders. ~~Time~~
~~employed in shifting  anchorages  and/or loading  places  within  the same port or its jurisdiction not to count as laytime,~~    211
~~and shifting expenses to be for Owners account.~~    212
At loading port(s)  in  the event of congestion Master  has the right to tender notice  of readiness at the customary    213
waiting place in ordinary office hours  by  cable/telex **to the sellers through shipping** Agents whether in berth or not,    214
whether  in port or not, whether
in free pratique  or not, whether customs  cleared  or not. Time proceeding  from customary  waiting  place  to **first**    215
loading berth/anchorage ~~not to count  as laytime.~~ **For Owner's account and time** If the loadport surveyor  is unable to attend    216
the vessel at the customary waiting
place  and  after  vessel's  arrival  at  loading  berth/anchorage  the  vessel  fails her **hatch cleanliness survey,**    217
~~laytime/demurrage shall  cease~~  time from the commencement of survey until all vessel's holds passed **is not to count as**
**laytime.**
~~from such failure until the vessel's holds are passed accordingly.~~    218

DISCHARGING    20. ~~Master to cable Approx 20 days vessel's arrival notice to~~    219
NOTICES    ~~dischargeport.~~.............................................................................................................................................
**to be advised to buyers. Definite 15/10/7/3/2 /1 days arrival notice to be advised to Receivers (to be advised), and**    220
**Diana shipping and trading ltd,Nicosia  fax no. 00357 22 766646 , e-mail : dianashi@diana-shipping.net ,**
~~giving his B.T.A.~~    221
Charterers to declare ~~first  (or sole)~~ discharging port to Owners or their Agents upon receipt of Master's **7 days**    222
notice. ~~Each additional  discharging  port (if any) to be declared to Owners or their Agents latest 24 hours prior to sailing~~    223
~~from previous port, and any nominations given  earlier not to be regarded as a final declaration.~~ Owners to be responsible    224
for all costs, consequences and damages of  whatsoever nature and howsoever arising in the event of Owners or Master's    225
failure to keep Charterers fully informed of any change in ship's position prior to arrival at discharging port(s).    226

DEVIATION    21. The ship has liberty to call at any port or ports on the route for fuel or other supplies, and to sail without pilots also    227
to tow and assist vessels in distress for Owners benefit, or to be assisted in all situations and to deviate for the purpose    228
of saving life or property.    229

DISCHARGING    22. At each discharging port, even if discharging commences earlier, laytime for discharge to begin at 1400 hours if written/    230
LAYTIME    cabled/telexed notice of readiness to discharge is tendered to Agents before noon and at 0800 hours next working day    231
if written/cabled/telexed notice of readiness is tendered to Agents after noon. Master has the right to tender notice of    232
readiness from the customary waiting place in ordinary office hours. Notice of readiness to be tendered to Agents in    233
ordinary office hours ~~Saturdays  afternoon, Sundays (or local equivalents) and holidays~~ **(Saturday to Wednesday 0730-**    234
**1400 hrs, and Thursday 0730-1300 hrs** ~~excepted~~ whether in berth or not.
Ship to discharge at the average rate of ( .........10000.................) metric tons calculated on gross weight provided    235
vessel can deliver at this rate, per weather working day of 24 consecutive hours, time from **Thursday** noon to 0800 hours    236
**Saturdays** (or local equivalents)and from 1700 hours day preceding a holiday until 0800 hours next working day excepted,    237
even if used. ~~Time employed in shifting anchorages  or  discharging places within the same port or its jurisdiction  not to~~    238
~~count as laytime, and shifting expenses to be for Owners' account.~~ **See Clause 48**    239
At discharging port(s)  in the event of congestion Master  has  the right to tender his notice of readiness by  cable/    240
telex in ordinary office hours to Agents whether in berth or not, whether in port or not, whether  in  free pratique or  not,    241
whether  customs  cleared  or not. Time proceeding from customary waiting place to discharge  berth/anchorage not to    242
count as laytime.    243

DEMURRAGE    23. If longer detained in loading and/or discharging ports, demurrage to be paid at the rate of.... US$ 26,500    244
DESPATCH    ...................................................................................per day, or in proportion for any part of a day.    245
Ship to pay US$ 13,250 ......per day, pro rata for working time saved at loading port and  **All time saved at**    246
**discharging port.**    247
~~or in proportion, despatch  money  for all working  time saved at both ends.~~ Laytime to be  non-reversible between    248
loading and discharging ports, ~~but may be reversible  at  Charterer's option  between the ports of loading or the ports~~    249
~~of discharging.~~    250
Demurrage or despatch to be settled directly between  Owners and Charterers in accordance with the terms, conditions    251
and exceptions of this Charter-Party.

| | | |
|---|---|---|
| | 24. ~~In the event that Charterers require the vessel to wait at any time prior to arrival at destination, Owners agree to instruct~~ | 252 |
| | ~~the Master to anchor at any safe place on passage in international waters or in Charterer's option at waiting place at~~ | 253 |
| | ~~discharge port. In respect of such Charterers are to pay Owners USD ...........................................................~~ | 254 |
| *WAITING* | ~~.....................................................................................per day or pro rata inclusive of bunkers but less commission.~~ | 255 |
| | ~~However, if the vessel waits at a place where the vessel is able to tender her notice of readiness then Charterers may~~ | 256 |
| | ~~elect to commence laytime as per Charter-Party.~~ | 257 |
| *RTIME* | 25. Overtime to be for account of the party ordering it. Officers and Crew overtime always to be for account of the vessel. | 258 |
| | If ordered by Port Authorities at loading/discharging ports to be for Shippers/Receivers' account. | 259 |
| *EXTRA INSURANCE* | 26. Any extra ~~insurance for cargo and/or prepaid freight owing to vessel's age and/or class and/or flag and/or Ownership to~~ | 260 |
| | ~~be for Owners account, and same to be deducted without documentation from freight.~~ Vessel free from extra Insurance due | 261 |
| | **to her age/flag/class.** | |
| *SEAWORTHY TRIM* | 27. ~~Should more than one load or one discharge port be used vessel to be left in seaworthy trim to Master's satisfaction~~ | 262 |
| | ~~for voyage between ports of loading or ports of discharging.~~ | 263 |
| *STRIKES AND* | 28. In the event that whilst at or off the loading place or discharging place the loading and/or discharging of the vessel is | 264 |
| *FORCE MAJEURE* | prevented or delayed by any of the following occurrences: strikes, riots, civil commotions, lockouts of men, accidents | 265 |
| | and/or breakdowns on railway, stoppages on railway and/or river and/or canal by ice or frost, mechanical breakdowns | 266 |
| | at mechanical loading plants, government interferences, vessel being inoperative or rendered inoperative due to the | 267 |
| | terms and conditions of employment of the Officers and Crew, time so lost shall ~~not~~ count as laytime or time on | 268 |
| | demurrage or detention. | 269 |
| *GENERAL AVERAGE* | 29. General Average, if any, shall be settled in London, as per York-Antwerp Rules 1994 and subsequent amendments. | 270 |
| *TIME BAR* | 30. Either party shall be discharged and released from all liability in respect of any claim or claims which either party may | 271 |
| | have under this Charter-Party and such claim or claims shall be totally extinguished, unless such claim or claims have | 272 |
| | been notified in detail to either party in writing within 12 (twelve) months from completion of discharge of the | 273 |
| | appropriate cargo under this Charter-Party. | 274 |
| *ARBITRATION* | 31. All disputes from time to time arising out of, or in connection with, this Charter-Party shall, unless the parties agree | 275 |
| | forthwith on a single arbitrator, be referred to the final arbitrament of two arbitrators, one to be appointed by each of | 276 |
| | the parties, with power to such arbitrators to appoint an umpire. The arbitrators shall be commercial men with knowledge | 277 |
| | of shipping and freight matters or members of the London Maritime Arbitrators Association. The arbitration to take | 278 |
| | place in London. If a party fails to appoint an arbitrator within 14 days of being called to do so, the other party may, | 279 |
| | in order to complete the arbitration tribunal, apply to the President of the LMAA for the appointment of an arbitrator | 280 |
| | on behalf of that party. | 281 |
| | The award of the sole arbitrator, two arbitrators or the umpire (as the case may be) shall be final and binding on | 282 |
| | both parties. No award shall be questioned or invalidated on the grounds that any of the arbitrators is not qualified as | 283 |
| | above, unless objection to his acting be taken during appointment. | 284 |
| | By mutual agreement the parties also have the option to adopt London Maritime Arbitrators Association Small | 285 |
| | Claims Procedure. | 286 |
| | This Charter-Party is governed by and construed in accordance with English Law. | 287 |
| *ARAB BLACK LIST* | 32. ~~Owners guarantee that the vessel fixed under this Charter is not wholly or partially owned by Israeli interests, and will~~ | 288 |
| | ~~not call at any Israeli ports from date of fixture until completion of discharge of this cargo. Owners further guarantee~~ | 298 |
| | ~~that this vessel is not on the Arab Black List, and undertake to provide a certificate from Arab Authorities, if so required,~~ | 290 |
| | **Up to Owners best knowledge, vessel is not blacklisted by the Arab League, and there is no Israeli interested in the** | |
| | **vessel. Vessel will not call at any Israeli port from the date of fixture until completion of discharge of this cargo.** | |
| | ~~and allow Bills of Lading to be so attested, if requested.~~ | 291 |
| *SUB-LET* | 33. Charterers have the option of sub-letting this Charter-Party, they remaining responsible to Owners for payment of | 292 |
| | freight and due fulfillment of terms of this Charter-Party. | 293 |
| *SATELLITE TRACKING* | 34. If required by Charterers/Shippers/Receivers or the cargo underwriters, a satellite tracking device may be placed on | 294 |
| | the vessel at the port of loading, carried free of charge and removed prior to completion of discharge. | 295 |
| *CERTIFICATES* | 35. ~~If required by Charterers, Owners undertake to issue or otherwise supply any letters or certificates in connection with~~ | 296 |
| | ~~vessel's classification, registration, age, flag, details of vessel's entry into P and I Club or any other certificates~~ | 297 |
| | ~~required by Charterers.~~ | 298 |
| | **If required by Charterers, Owners undertake to issue , without prejudice, or otherwise supply any Letter or certificates** | |
| | **in connection with vessel's classification, registrations, age, flag,gear,details of vessel's entry in P&I Club, or any** | |
| | **other certificates available to owners that Charterers may require to comply with and negotiate Letter of Credit** | |
| | **for the sale of sugar.** | |
| *BREAKING UP* | 36. Owners guarantee that this vessel has not already been sold for breaking up nor will be sold for breaking up during the | 299 |
| | currency of this Charter-Party. | 300 |
| *PROTECTIVES* | 37. War Risks Clauses 1 and 2, Both-to-Blame Collision Clause, New Jason Clause and P & I Bunkering Clause **and** | 301 |
| | New Paramount Cluse (as attached) are deemed to be incorporated in this Charter-Party. | 302 |
| *SECRECY* | 38. Under no circumstances are Owners and Brokers concerned in the fixture of this vessel to divulge any details of this | 303 |
| | fixture whatsoever to anyone outside their own organisation. | 304 |

**Additional Clauses Nos 39- 53 inclusive as attached are deemed to be fully incorporated in this Charter party.**




OWNERS                                                                     CHARTERERS

*RIDER*

CHARTER-PARTY dated in ......Nicosia.................. the 5TH of February 2007...............................................
*(This Rider is deemed fully incorporated in but not to be attached to Charter-Party)*

With reference to Clause 9, "Freight as per agreement", rates of freight are to be as set hereunder:

Freight US$ 48.00 free in/out spout trimmed per metric ton bss
Freight inclusive of Extra War Risk/Crew War Bonus/Blocking and Trapping which to be for Owner's A/C.

**FREIGHT PAID BILLS OF LADING**
~~Charterers are authorised, once the 90% freight has been remitted to mark Bills of Lading "Prepaid" or "Freight Paid".~~

**COMMISSION**
Owners to pay a commission of 6.25 %  to the order of Charterers, payable on the gross amount of freight, deadfreight and demurrage, due on shipment of cargo, ship lost or not lost and subsequent demurrage at discharge port(s).

**OWNERS**                          **CHARTERERS**

MV " MARIGOLD " -  C/P dated 5th February 2007
Additional Clauses

**Clause 39**
Owners guarantee that vessel is Classed Highest Lloyds 100A1 or equivalent and P&I
covered, and that vessel shall not be sold / change Ownership during currency of this
Charter Party, and shall not change Class or P&I Club.

**Clause 40**
Owners guarantee that vessel is fully fitted and suitable for the carriage of raw sugar
cane in bulk.

**Clause 41**
Owners guarantee that the vessel has not carried fishmeal/illegal goods and/or bone
meal
in her last three voyages or other similar cargo that would affect loading of raw sugar
cane in bulk.

**Clause 42**
Owners guarantee that vessel's gear is in full working order serving all hatches. In
addition, the vessel has up to date certificates and documentation to perform the
intended voyage.

**Clause 43**
Owners guarantee that the vessel's hatches are watertight.

**Clause 44**
Owners confirm that the vessel will not be scrapped after this voyage.

**Clause 45**
A hose testing would be carried out on the vessel's hatch covers , and in case of
vessel's failure, Owners to repair same in order to make watertight at their
time/expense.

**Clause 46**
Owners guarantee that all vessel's crew members vaccination cards/certificates are
upto date and valid. Any time lost at load/discharge port (s), due to any deficiency,
not to count as lay time unless used and any additional costs incurred due to any
deficiency to be for Owner's account.

**MV " MARIGOLD " -  C/P dated 5th February 2007**
**Additional Clauses**

**Clause 47**
Should the original Bills of Lading will not be available for presentation to the Master
on arrival at discharge port, Owners and the Master agree to release cargo as
authorised by Charterers, but Charterers are to indemnify Owners, their servants and
agents and to hold all of them harmless in respect of any reason arising from such
authorised release of cargo without original Bills of Lading.
Charterers to provide Owners prior to commencement of discharge with a Letter of
Indemnity issued in accordance with Owner's P&I Club requirements and legibly
signed a person authorised to sign such Letter on behalf of the Charterers.
Bills of Lading to be issued to named Receivers.


**Clause 48**
At loading and discharging ports, shifting costs from anchorage to first berth to be for
Owner's account/time.
At loading and discharging port, shifting between loading berths and between
discharging berths to be for Owner's account, but time to count as lay time.


**Clause 49**
B/l will be issued as per shore figure, but in case ships figure shows less quantity than
the shore figure, a joint draft survey will be done, the results of which will be
regarded as final. In case this joint draft survey shows a less quantity that the shore
figure, the same should be compensated for by the seller.
The total quantity loaded to be determined as per figures, shown on the b(s)/l signed
by vessels master or his authorized representative.

**Clause 50**
Owners to appoint Charterer's nominated  agents both ends.

**Clause 51**
Lighterage/lightening, if any, to be for Charterer's account.

**Clause 52**
All taxes/dues on vessel and/or freight to be for Owner's account both ends.
All taxes/dues on cargo to be for Shippers/Cargo Receiver's account and settled
directly by them both ends.


**Clause 53**
Bimco  ISPS/MTSA Clause for Voyage Charter Parties 2005 to apply.


**NEW PARAMOUNT CLAUSE**

Charterers shall procure that Bills of Lading issued under this Charter shall contain
the following Clauses :

1)  Have effect subject to any national legislation making the Hague Rules as

### MV " MARIGOLD " -  C/P dated 5th February 2007
### Additional Clauses

amended by Protocol signed at Brussels on the 23rd February 1968 (The Hague Visby Rules) compulsory applicable to this Bill of Lading and nothing herein contained shall be deemed to be surrender by the carrier of any of his rights or immunities under the said legislation. The Hague Visby Rules shall not apply to this contract where the goods carried hereunder consist of cargo which by this contract is stated  as being carried on deck and so carried, or, in the absence of such legislation.

2)  Have effect to any additional legislation making The Hague Rules compulsory applicable to this Bill of Lading and nothing herein contained shall be deemed to be surrender by the carrier of any of this rights or immunities under the said legislation or an increase of any of his responsibilities or liabilities under the said legislation, or

3)  In any other case have effect as if the contract of carriage to which The Hague Rules applied and the carrier shall be entitled to the benefit to the privileges, rights and immunities conferred by The Hague Rules as if the same were herein specifically set out.


If any term of this Bill of Lading shall be repugnant to The Hague Visby Rules, or to The Hague Rules, as the cause may be, such term shall be void to that extent, but no further.


_____              _____

OWNERS                                          CHARTERER

# Ex. B



## Laytime Calculation

### Discharging Bandar Khomeini

| | | | |
|---|---|---|---|
| Vessel | MARIGOLD | Owner | Bunge SA - Geneva office |
| Ref | Voyage 3 (2007/0171) | Charterer | DIANA SHIPPING AND TRADING LTD., NICOSIA |
| CPDate | | Cargo | Sugar |

Port Discharge - Bandar Khomeini Sugar 46,450.000 MT at 10,000.00 MT/d (SHEX Thu 12:00 to Sat 08:00)

| | | | |
|---|---|---|---|
| Demurrage Terms | 26,500 USD per Day (Always on Demurrage) | | |
| Despatch Terms | 13,250 USD per Day (Working Time Saved) | | |
| Vessel arrived | 28Mar2007 23:24 | Notice | 29Mar2007 08:00 |
| All Fast | 29Mar2007 08:00 | Discharging commenced | 04Apr2007 14:34 |
| Discharging completed | 21Apr2007 17:15 | | |
| Time To Count From | 31Mar2007 08:00 | Time To Count To | 21Apr2007 17:15 |

| Day | Date | From | To | Description | Time | Pcnt | Laytime | Demurrage |
|-----|------|------|-----|-------------|------|------|---------|-----------|
| Sat | 31Mar2007 | 08:00 | 17:00 | | 09:00 | 100 | 09:00 | |
| Sat | 31Mar2007 | 17:00 | 24:00 | Holiday | 07:00 | 0 | 00:00 | |
| Sun | 01Apr2007 | 00:00 | 24:00 | Holiday | 24:00 | 0 | 00:00 | |
| Mon | 02Apr2007 | 00:00 | 24:00 | Holiday | 24:00 | 0 | 00:00 | |
| Tue | 03Apr2007 | 00:00 | 08:00 | Holiday | 08:00 | 0 | 00:00 | |
| Tue | 03Apr2007 | 08:00 | 24:00 | | 16:00 | 100 | 16:00 | |
| Wed | 04Apr2007 | 00:00 | 24:00 | | 24:00 | 100 | 24:00 | |
| Thu | 05Apr2007 | 00:00 | 12:00 | | 12:00 | 100 | 12:00 | |
| Thu | 05Apr2007 | 12:00 | 24:00 | Excluded | 12:00 | 0 | 00:00 | |
| Fri | 06Apr2007 | 00:00 | 24:00 | Excluded | 24:00 | 0 | 00:00 | |
| Sat | 07Apr2007 | 00:00 | 08:00 | Excluded | 08:00 | 0 | 00:00 | |
| Sat | 07Apr2007 | 08:00 | 24:00 | | 16:00 | 100 | 16:00 | |
| Sun | 08Apr2007 | 00:00 | 11:10 | | 11:10 | 100 | 11:10 | |
| Sun | 08Apr2007 | 11:10 | 12:00 | Bad weather | 00:50 | 0 | 00:00 | |
| Sun | 08Apr2007 | 12:00 | 13:45 | | 01:45 | 100 | 01:45 | |
| Sun | 08Apr2007 | 13:45 | 15:00 | Bad weather | 01:15 | 0 | 00:00 | |
| Sun | 08Apr2007 | 15:00 | 17:00 | | 02:00 | 100 | 02:00 | |
| Sun | 08Apr2007 | 17:00 | 18:00 | Bad weather | 01:00 | 0 | 00:00 | |
| Sun | 08Apr2007 | 18:00 | 24:00 | | 06:00 | 100 | 06:00 | |
| Mon | 09Apr2007 | 00:00 | 13:34 | | 13:34 | 100 | 13:34 | |

**--- ON DEMURRAGE 09Apr2007 ---**

**13:34 ---**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Mon 09Apr2007 | 13:34 | 24:00 | | 10:26 | 100 | 10:26 | 10:26 |
| Tue  10Apr2007 | 00:00 | 24:00 | | 24:00 | 100 | 24:00 | 24:00 |
| Wed 11Apr2007 | 00:00 | 24:00 | | 24:00 | 100 | 24:00 | 24:00 |
| Thu  12Apr2007 | 00:00 | 12:00 | | 12:00 | 100 | 12:00 | 12:00 |
| Thu  12Apr2007 | 12:00 | 24:00 | Excluded Always on Demurrage | 12:00 | 100 | 12:00 | 12:00 |
| Fri   13Apr2007 | 00:00 | 24:00 | Excluded Always on Demurrage | 24:00 | 100 | 24:00 | 24:00 |
| Sat  14Apr2007 | 00:00 | 08:00 | Excluded Always on Demurrage | 08:00 | 100 | 08:00 | 08:00 |
| Sat  14Apr2007 | 08:00 | 24:00 | | 16:00 | 100 | 16:00 | 16:00 |
| Sun  15Apr2007 | 00:00 | 24:00 | | 24:00 | 100 | 24:00 | 24:00 |
| Mon 16Apr2007 | 00:00 | 24:00 | | 24:00 | 100 | 24:00 | 24:00 |
| Tue  17Apr2007 | 00:00 | 24:00 | | 24:00 | 100 | 24:00 | 24:00 |
| Wed 18Apr2007 | 00:00 | 24:00 | | 24:00 | 100 | 24:00 | 24:00 |
| Thu  19Apr2007 | 00:00 | 12:00 | | 12:00 | 100 | 12:00 | 12:00 |
| Thu  19Apr2007 | 12:00 | 24:00 | Excluded Always on Demurrage | 12:00 | 100 | 12:00 | 12:00 |
| Fri   20Apr2007 | 00:00 | 24:00 | Excluded Always on Demurrage | 24:00 | 100 | 24:00 | 24:00 |
| Sat  21Apr2007 | 00:00 | 08:00 | Excluded Always on Demurrage | 08:00 | 100 | 08:00 | 08:00 |
| Sat  21Apr2007 | 08:00 | 17:15 | | 09:15 | 100 | 09:15 | 09:15 |

| | | |
|---|---|---|
| **DEMURRAGE** | 12 Days 3 Hours 41 Mins (12.1534722) | Time Allowed    04:15:29 |
| | at USD 26,500 per Day | Time Used      16:19:10 |
| | = USD 322,067.01 | On Demurrage  12:03:41 |

Generated by SoftMAR